## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MOHAMED MIDDLE, #1509411      :

     Petitioner           :

v                           :        Civil Action No. PWG-15-3333

ROBERT L. GREEN and      :
THE ATTORNEY GENERAL OF THE STATE
  OF MARYLAND         :

     Respondents      :

                      oOo

### MEMORANDUM OPINION

Petitioner Mohamed Middle, a prisoner housed at the Worcester County Jail,[1] seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, raising one issue centered on admission of evidence at trial. Pet., ECF No. 1; Mot. of Notice and Introduction ("First Supp."), ECF No. 2; Supp. to Pet. ("Second Supp."), ECF No. 5.[2] After reviewing the parties' submissions, I find no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *see also* 28 U.S.C. § 2254(e)(2). For reasons set forth herein, the petition shall be dismissed and a certificate of appealability shall not issue.

### Procedural and Factual History

Middle seeks to invalidate his convictions in the Circuit Court for Montgomery County for stalking, harassment, malicious destruction of property, and violation of a protective order for

---

[1] Middle, a citizen of Tanzania, is in the custody of Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE"). *See* Mem. Op. 2, ECF No. 2 in *Middle v. Green,* PWG-15-3332 (D. Md.). Jail personnel indicate that Middle has been transferred from the Montgomery County Detention Center to the Worcester County Jail.

[2] This Memorandum Opinion references pagination as assigned by the Court's electronic docket system.

which three years of incarceration was imposed on August 1, 2014. Pet.; First Supp.; *Maryland v. Middle*, No. 124298C (Cir. Ct. Montgomery Cnty., filed Jan. 24, 2014). [3]

The Court of Special Appeals of Maryland summarized the facts that led to Middle's conviction:

> Fouzia Godfield testified that she married appellant [Middle] in February 2005, and they lived together at 27 Crested Iris Court. In December 2012, Ms. Godfield and appellant separated. She obtained a Protective Order against appellant, which provided that, except as stated in the order, appellant "shall not" contact her "by any means."
>
> Despite the Protective Order, appellant called Ms. Godfield several times from an unknown number and left voicemails. He also sent her notes in October and November 2013. In October, he sent a note stating: "I want to destroy you," with a drawing of a hand replicating the shape of a gun. In November, he sent notes written on a napkin and a torn, yellow sticky note. In December 2013, Ms. Godfield observed appellant watching her from a parked car after she had been grocery shopping in a nearby store. Because she feared for her safety, she called the police.
>
> On the morning of December 5, 2013, a few days after she spoke with the police, Ms. Godfield noticed that the doorknob on the front of her house was dented, and there were scratches around it. When she went to her car, she discovered that the driver's side door was open, the driver's seat was "cut up," and there was a "huge knife and . . . a note that was tacked into that knife" stuck onto the driver's seat. The note read:
>
> > Do you think you can not be reached! Or did you think that piece of shit! You got from court Will protect you! You took my children! You took my house! And then you FILED FOR DIVORCE!!!!!!! I am too proud Man to contest your stupid Divorce! But I can have any woman I want, my girlfriend Florence will be witched you. . . I AM A MUSLIM MAN IN THIS RELATIONSHIP! YOU DON'T GET TO VOTE HOW My life is going to be! Make no mistake I will have the last word!!!!! An IF YOUR NOT MARRIED TO ME! YOU BETTER BE BARRIED BITCH!!!!![] YOU GOT THAT!!!![]

---

[3] The record for Criminal Case No. 124298C, is available through the Maryland Judiciary Case Search, casesearch.courts.state.md.us/casesearch.  Middle also was found guilty on August 12, 2014, for a violation of probation in Criminal Case No. 122246C and sentenced to one year of incarceration with credit for 156 days served, to be served consecutive to all other sentences. *Maryland v. Middle*, No. 122246C (Cir. Ct. Montgomery Cnty., filed Feb. 21, 2013).  The violation of probation conviction is not at issue here.

Ms Godfield immediately contacted the police.

Ms. Godfield subsequently took her car to be repaired. She also asked the repair company to check a strange noise and some wires that were hanging under the dashboard of her car, which she had noticed in November. The repair company found a foreign object that had been placed under Ms. Godfield's dashboard, and Ms. Godfield testified that the object was not there when she purchased the car.

Brent Davis testified that the foreign object discovered in Ms. Godfield's car was a GPS tracking device. He further testified that such a device is not usually present in a car like Ms. Godfield's when it leaves the factory.

Diana Lawder, a forensic scientist with the Maryland State Police, testified as an expert for the State. She compared four of the handwritten notes that Ms. Godfield received against known samples of appellant's handwriting, and she concluded that three were "virtually certain" to have been written by appellant. With respect to the fourth document, Ms. Lawder "found class characteristics, but that's not enough to identify somebody."

Anthony Wiggins testified that appellant worked for him at "A and W Assisted Living" beginning in September 2013. Appellant worked on a "three [day] on and four [day] off" schedule, where he would work alternating 12 hour shifts during a three day period, during which he was required to be on the premises at all times. Appellant had such a three day shift between December 3, and December 6, 2013. Mr. Wiggins saw appellant during that three day period, and he was not alerted that appellant left at any time.

State Ct. Op. 1–3, Resp. Ex. 6, ECF No. 9-6 (mislabeled as reply brief).

In appealing his conviction, Middle argued that only the first page of the protective order should have been admitted into evidence, rather than the two-page redacted version, which he argued contained irrelevant, cumulative, and severely prejudicial information. Br. of Appellant 2, Resp. Ex. 4, ECF No. 9-4. The appellate court concluded as follows:

We agree with the State that the circuit court properly exercised its discretion in admitting more than the first page of the Protective Order because page two of the order helped to give the jury the full context of the order. Page one of the Protective Order stated that appellant "SHALL NOT abuse, threaten to abuse, and/or harass the Protected Parties," "SHALL NOT contact Protected Parties by any means, except as stated in this Order," and "Additional terms of the Order are as set forth in this document." Given that language, the second page, which

set forth the "[a]dditional terms" was relevant to give the jury context regarding the scope of the order.

Appellant contends, however, that the prejudicial value of the second page outweighed its probative value. In support, he cites to three items that he claims were unfairly prejudicial. Two of the items include terms of the Protective Order: (1) that appellant stay away from "[a]n undisclosed place of employment for reasons of safety"; and (2) that appellant "immediately surrender all firearms[s]." [footnote omitted].

Appellant contends that these conditions indicated to the jury that the court that issued the Protective Order believed that he was a danger to Ms. Godfield, and therefore, the admission of these conditions was unfairly prejudicial. We disagree.

The first page of the "Protective" Order, to which appellant did not object, provides that appellant was not to contact Ms. Godfield in any way. This implies some threat to Ms. Godfield's safety. Given that, the portion of the second page citing a danger to safety at Ms. Godfield's place of employment was not unduly prejudicial.

With respect to the condition regarding firearms, the first page of the Protective Order noted that, under both Maryland and Federal law, a person may not possess a firearm while subject to a protective order. Given that, there is no basis for the argument that admission of the portion of the order stating that appellant was required to surrender any firearms was unduly prejudicial. We hold that the circuit court did not abuse its discretion in admitting the terms of the Protective Order contained on page two of the order.

## D.

### The Prior Assault

Appellant also contends that the circuit court erred in admitting the portion of Section C that contained a finding that he placed Ms. Godfield "in fear of imminent serious bodily harm" and committed an assault. For clarity, we set forth the redacted portion of the Protective Order in this regard, as follows:

> C. There is clear and convincing evidence to believe that
>
> the Respondent committed the following act(s) of abuse:
>
> Placed Person Eligible for relief in fear of imminent serious
>
> bodily harm Assault in any degree
>
> ~~ON 12/10/2012 RESPONDENT BECAME VERY ANGRY,~~
>
> ~~HE PUT BOTH OF HIS HANDS AROUND PETITIONER'S~~
>
> ~~NECK AND CHOCKED [sic] HER. HE THREATENED~~
>
> ~~PETITIONER.~~[7]4

---

[4] Footnote 7 in the opinion noted that the stricken text is that which was redacted.

Although the court redacted the description of the offense, appellant argues it should have redacted the information that he previously had assaulted Ms. Godfield and placed her in fear of serious bodily harm, asserting that this evidence had minimal probative value, which was outweighed by the prejudicial nature of the evidence. With respect to probative value, although, he concedes that this evidence "may have been relevant to whether his conduct between October and December would have alarmed or seriously annoyed Ms. Godfield, or whether it would reasonably have placed her in fear of serious bodily injury," citing *Streater v. State*, 352 Md. 800, 815-16 (1999), he contends that, given the nature of the contact alleged, the "central question" facing the jury "was not the impact of the alleged conduct on Ms. Godfield, but rather whether [appellant] was responsible for that conduct." He asserts that "the only way in which the findings in the Protective Order were probative as to whether [he] was responsible for the conduct here was through improper propensity reasoning."

The State argues that the circuit court "properly exercised its discretion to admit this additional information as its probative value outweighed any undue prejudice." It asserts that the reference to appellant's actions against Ms. Godfield was admissible to demonstrate both that appellant committed the conduct alleged in this case and to establish the elements of each charged offense. It further argues that the evidence was not unduly prejudicial, as the first page of the Protective Order already indicated to the jury that appellant "had committed some act against [Ms.] Godfield that warranted a court order that he not abuse, harass or threaten her."

As appellant admits in his brief, the substantive portions of the Protective Order had probative value. The Court of Appeals' analysis in *Streater*, 352 Md. at 819 makes that clear. In that case, the defendant similarly was charged with, *inter alia*, stalking and harassment. *Id.* at 802-03. The Court stated that the substantive aspects of the Protective Order had probative value, stating:

> The finding that [the defendant] committed acts which included threats that placed [the victim] in fear of imminent bodily harm carry probative value with respect to the stalking and harassment offenses in that they tend to show that [the victim] was in reasonable fear of serious bodily injury and that [the defendant] intended to harass her.

*Id.* at 819. With respect to the finding in the Protective Order that appellant had committed an assault or a battery, the Court of Appeals held that such a finding had "significant probative value with respect to the intent and course of conduct elements of the stalking and harassment charges." *Id.*

Although the Court in *Streater* reversed the conviction on the ground that the circuit court did not properly assess whether the evidence there constituted inadmissible other crimes evidence, no such claim is made in this case. At oral argument, counsel for appellant agreed that the only issue he raised below was

whether the probative value of the order was significantly outweighed by its prejudicial value. Accordingly, that is the only issue before us. *See Correll v. State*, 215 Md. App. 483, 497 (2013) ("Ordinarily, a nonjurisdictional issue is not preserved for appellate review if it was not raised in or decided by the lower court.") (citing Md. Rule 8-131(a)), *cert. denied*, 437 Md. 638 (2014).

Pursuant to *Streater*, it is clear in this case, where appellant also was charged with stalking and harassment, that the portion of the Protective Order referring to appellant's assault of Ms. Godfield had significant probative value. Appellant's prior actions placing Ms. Godfield in fear of imminent bodily harm and assaulting her were of significant probative value to the question whether appellant knew or reasonably should have known that his actions would alarm Ms. Godfield and place her in reasonable fear of bodily injury. [footnote omitted].

Moreover, a prior assault of a victim is relevant to demonstrating the course of conduct that must be shown to satisfy the elements of stalking. *See Hackley v. State*, 161 Md. App. 1, 20, *aff'd*, 389 Md. 387 (2005). Accordingly, we hold that the portion of the Protective Order that referred to an assault committed by appellant was highly probative to two separate offenses with which appellant was charged.

Moreover, we are not persuaded that this portion of the Protective Order was "unfairly" prejudicial. Evidence is unfairly prejudicial when "it might influence the jury to disregard the evidence or lack of evidence regarding the particular crime with which [the defendant] is being charged." *Burris v. State*, 435 Md. 370, 392 (2013) (quoting *Odum v. State*, 412 Md. 593, 615 (2010)). Here, the jury knew, based on the issuance of the Protective Order, that appellant had taken some action that justified the order. We cannot conclude that the circuit court abused its discretion in concluding that the prejudice in the admission of the evidence that appellant had assaulted the victim did not outweigh the probative value of the evidence. Appellant states no claim for reversal in this regard.

State Ct. Op. 11–17. The judgment of conviction was upheld in an unreported decision issued on

July 8, 2015. *See id.*; *Middle v. Maryland,* 2015 WL 5968904. Middle's petition for certiorari

review was denied by the Court of Appeals of Maryland on October 28, 2015. *See Middle v.*

*Maryland,* Pet. Docket No. 329 (Md. Oct. 19, 2015).

On October 30, 2015, Middle filed the pending petition, alleging that the trial court's

ruling in admitting portions of the protective order violated his constitutional rights because the

evidence did not meet the admission "threshold" and instead confused, misled and prejudiced the

jury. Pet.; Second Supp.

At the time he filed his petition, Middle indicated that a state post-conviction petition was "in progress."[5]  Pet. 3–5.  In response, Middle was advised that he must choose between proceeding on the sole claim raised in his federal habeas petition, or presenting a reason why he should be afforded stay and abeyance to complete state post-conviction proceedings.  Nov. 12, 2015 Mem. Op. 2, ECF No. 4.  His request to stay this case while completing state post-conviction, Second Supp., was subsequently denied, ECF No. 6.

In response to the petition, respondents argue that Middle's sole claim is procedurally defaulted, is not cognizable, and is without merit.  ECF No. 9.

## Threshold Considerations

### Timeliness & Exhaustion of State Remedies

Respondents do not contend, and the Court does not find, that the petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1).  Further, Middle no longer has any state direct review available to him with respect to the claim, which therefore is deemed exhausted for the purpose of federal habeas corpus review.

## Standard of Review

Middle's claim will be analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254 which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011) (internal quotation marks and citations omitted); *see also White v. Woodhall*, 134 S. Ct. 1697, 1699 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (state prisoner must show state court

---

[5] Middle also filed a state habeas corpus petition in the Montgomery County Circuit Court on October 18, 2015.  That filing plays no role in this case.

ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id.* Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S. Ct. at 785 (internal quotation marks and citation omitted).

Further, under § 2254(d)(2) "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379 (quoting 28 U .S.C. § 2254(e)(1)).

## Analysis

Middle argues that the trial court erred by admitting portions of the protective order. Pet.; Second Supp. He asserts that the trial court's ruling violated his constitutional rights because this evidence did not meet the admission "threshold," and the evidence confused, misled, and prejudiced the jury. Pet.; Second Supp.

Respondents argue that the claim now presented by Middle, who is self-represented, is procedurally defaulted because it differs from the claim presented for state appellate review. Resp. 7–8. The differences need not defeat Middle's claim. The admission of the protective order at the State's request was a contested issue at trial and on appeal. *See* Br. of Appellant, Br.

9

of Appellee, Reply Br., and State Ct. Op., ECF Nos. 9-4 through 9-7.  At trial, the protective

order was admitted in a redacted form.  Middle challenged this ruling on his direct appeal to the

Court of Special Appeals, arguing that the Circuit Court erred in admitting the entirety of the

protective order with only minor redaction, instead of admitting only the first page.  Br. of

Appellant; *see also* Pet. 6, ¶ B.  As noted herein, the appellate court affirmed the ruling of the

trial court, and the Court of Appeals of Maryland denied Middle's request for further review of

the intermediate appellate court's judgment.  State Ct. Op. 17; Order Denying Pet. for Writ of

Cert., ECF No. 9-8.

Although inartfully stated here, it is apparent that Middle intends to attack the admission

of the entire protective order as redacted, and that he has attempted to present this question

throughout the state appellate process.  Thus, examination of the claim must be limited to include

only the parameters of the issue presented on direct appeal:  whether the trial court erred when it

failed to exclude all but the first page of the complaining witness's protective order against

Middle, resulting in the admission of irrelevant, cumulative, and severely prejudicial

information.  Br. of Appellant 2.

Respondents' strongest argument lies in the fact that the claim is not cognizable in the

context of federal habeas corpus review; the claim is grounded solely in state law, and thus not

subject to review in federal habeas corpus proceedings under 28 U.S.C. § 2254(a) (authorizing a

federal court to entertain a state prisoner's habeas petition "only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States") and *Estelle v.*

*McGuire,* 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions).[6]  Because the appellate ruling

---

[6] *See also Wilson v. Corcoran,* 561 U.S. 1, 2 (2011) (same).

pertains to Maryland law as it relates to admission of evidence, it is not the role of this court to second guess those conclusions. *See Rose v. Hodges* 423 U.S. 19, 21–22 (1975). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).[7]

In any event, the claim fails on the merits. The state appellate court fully explained why the protective order was admissible in its redacted form. The ruling is neither unreasonable nor contrary to Supreme Court precedent. Middle's claim states no basis for relief under 28 U.S.C. § 2254(d).

## Conclusion

Middle's petition for habeas corpus relief will be denied and this case dismissed by separate order. When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-el v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v.*

---

[7] On appeal, Middle cited *Old Chief v. United States,* 519 U.S. 172 (1997), in which the Supreme Court held that a federal trial court abused its discretion under the federal rules of evidence by declining an offer by the defendant to concede the element of a prior felony conviction for purposes of the federal "felon in possession of a firearm" statute. *Id.* at 174–92. *Old Chief* did not purport to clearly establish a constitutional rule binding on the states. In any event, the ruling in Middle's case is based on Maryland rules of evidence, and the federal rules of evidence are not at issue.

*Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Middle does not satisfy this standard, and I declined to issue a certificate of appealability.

A separate order follows.

04 18 16
Date

Paul W. Grimm
United States District Judge